IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH W. ALVAREZ,

    Petitioner,                        No. CIV S-10-CV-1487 LKK CHS

    vs.

GREG LEWIS,[1]

    Respondent.                  FINDINGS AND RECOMMENDATIONS

_____/

## 1. INTRODUCTION

Petitioner, Joseph W. Alvarez, is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is currently serving a determinate sentence of life without the possibility of parole plus twenty-five years to life with the possibility of parole following his 2005 conviction in the Sacramento County Superior Court for first degree murder intentionally perpetrated under the special circumstance of discharging a firearm from a

---

[1] Greg Lewis is substituted for his predecessor, Darrel Adams, as the current acting warden at Pelican Bay State Prison, where Petitioner is currently incarcerated, pursuant to FED. R. CIV. P. 25(d).

1

motor vehicle, with a penalty enhancement for use of a firearm.[2]  Here, Petitioner challenges the constitutionality of his conviction.

## II. CLAIMS

Petitioner presents several grounds for relief.  Specifically, the claims are as follow:

(1) The trial court improperly denied his motion for a new trial based on ineffective assistance of counsel.

(2) Insufficient evidence supported his conviction.

Based on a thorough review of the record and applicable law, it is recommended that both of Petitioner's claims be denied.

## III. BACKGROUND

The basic facts of Petitioner's crime were summarized in the unpublished opinion of the California Court of Appeal, Third Appellate District, as follow:

> In the early morning hours of June 21, 2004, defendant fatally shot Damon Jacob. Amanda Razick, Lanette Watson, and Moriah Charley testified regarding the circumstances of the shooting.
>
> Razick testified that early on June 20, 2004, defendant and his girlfriend, Moriah Charley, came to Razick's residence where they all smoked marijuana.  Defendant and Charley left around noon, but returned about 9:00 p.m. and smoked more marijuana as well as methamphetamine.  Later that night, all three left in Charley's Cadillac, with defendant driving, Charley in the front passenger seat, and Razick in the back.
>
> While defendant was driving on Highway 99, a Mercedes Benz drove alongside, and the driver - - later identified as Damon Jacob - - motioned for defendant to roll down his window.  Defendant did so, and Jacob yelled, "Can I holler at that bitch in the back," meaning he wanted to speak with Razick.  Charley told defendant that she thought Jacob was the "black dude" with whom Charley's brother had a problem a week earlier.  Razick stated she was not interested in talking to Jacob, but defendant said, "Well, you can tell him that," and pulled off the freeway.

---

[2] Based on a separate incident not at issue herein, Petitioner was also convicted of evading a peace officer by means of a high-speed chase and possession of methamphetamine.

2

Defendant stopped at a side street, and the Mercedes Benz stopped behind him. As Jacob approached the Cadillac, Razick thought he might have said, "It's all cool, right? Everything's all good." Jacob asked Razick some questions about her social life and whether she wanted his phone number. Thinking that getting Jacob's phone number would satisfy him, Razick leaned down to get her cell phone and heard a gunshot. When Razick sat up, she saw Jacob on the ground. During Razick's conversation wtih Jacob, the only item she saw him holding was a cell phone; she did not see him with any weapon, nor had there been any argument or yelling preceding the shooting.

Defendant immediately drove off and, at Razick's request, dropped her off at a motel.

Charley testified, confirming Razick's testimony concerning their smoking methamphetamine the night of the shooting. Charley added that she and defendant smoked "a lot" of it and that they were both high. While all three were driving on Highway 99 in Charley's Cadillac, which she had just purchased from her brother about a month before, Jacob drove alongside them in his Mercedes Benz and indicated for them to pull over. Charley told defendant that she did not know Jacob, but that he looked like the "dude" who had a problem with her brother and who was driving a Mercedes Benz. Her brother had warned her to "look out because . . . there ain't no tellin' what these Niggas goin' do." Charley suggested they pull over and find out whether Jacob was the person about whom her brother had warned her.

After pulling off the freeway, Jacob got out of his Mercedes Benz and asked, "Is it cool to come to the car?" Someone said, "Yeah, it's cool," and Jacob walked to the car. As he did so, he had his hands under his shirt in the area of his belt. Being suspicious that Jacob may have a gun, Charley closely watched Jacob as he approached the car and spoke with Razick. Although Charley did not see a gun, suddenly there was a flash and they drove off. Charley did not know until the next morning that Jacob was killed.

Lanette Watson testified that she was riding with Jacob, who was a friend, when the Cadillac driven by defendant pulled alongside Jacob's Mercedes Benz. Jacob said that the female in the back of the Cadillac was nice looking and that he wanted to talk to her. Jacob indicated to defendant that he wanted to speak with Razick and followed defendant off of the freeway. Jacob got out of the car and asked, "Am I safe gettin' out of my car?" He then walked to Razick's window. While Jacob was smiling and talking with Razick, he looked at Watson like, "Oh, no." Watson saw that defendant had his arm extended and was holding a gun; defendant then shot Jacob in the head, killing him instantly. Defendant immediately drove back

>onto the freeway.
>
>Investigation led to a warrant being issued for defendant's arrest for the killing of Jacob. On September 29, 2004, following a high-speed chase that ended when defendant collided with another vehicle, defendant was arrested. During a police interview, defendant repeatedly told the investigator that he knew nothing about the shooting or a white Cadillac.

Lodged Doc. 1 at 2-4.

Following Petitioner's conviction, he hired new counsel who filed a motion for a new trial based on a claim that Petitioner had received ineffective assistance of counsel at trial. The motion was denied on January 27, 2006. Petitioner timely appealed his conviction to the California Court of Appeal, Third Appellate District. The court affirmed his conviction with a reasoned opinion on July 30, 2008. He then filed a petition for review of the appellate court's decision in the California Supreme Court. The court denied his petition without comment on October 28, 2008. Petitioner subsequently petitioned for habeas corpus relief in the California Supreme Court. The court denied his petition without comment on April 14, 2010. Petitioner filed his federal petition for writ of habeas corpus on June 16, 2010. Respondent filed its answer on October 5, 2010, and Petitioner filed his traverse on December 20, 2010.

## IV. APPLICABLE STANDARD OF HABEAS CORPUS REVIEW

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 n. 7 (2000). Federal *habeas corpus* relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

4

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).  This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

## V. DISCUSSION

### A. PETITIONER'S MOTION FOR A NEW TRIAL

Petitioner claims that the trial court erred in denying his motion for a new trial based on his allegation that trial counsel rendered constitutionally deficient assistance in multiple ways. First, Petitioner contends that counsel failed to develop and present evidence regarding his ability to form the intent to murder due to his drug use in the time period leading up to the murder.  Next, he contends that counsel failed to offer any testimony regarding Petitioner's state of mind at the time of the murder.  In addition, Petitioner contends that counsel improperly advised him not to testify on his own behalf.  Lastly, he contends that counsel failed to present available forensic gunshot residue evidence found on the victim's hands.  The California Court of Appeal, Third Appellate District, considered and rejected Petitioner's claim on direct appeal, explaining as follows:

> I
>
> Following defendant's convictions, he retained new counsel who filed a motion for a new trial based on a claim of ineffective assistance of trial counsel.  The motion was denied.
>
> Defendant contends the denial of the motion was prejudicial error,

5

advancing the same arguments he did in the trial court. Specifically, he claims that trial counsel was ineffective because she failed (1) to retain an expert and to present a diminished actuality defense based on defendant's being under the influence of methamphetamine at the time of the shooting, (2) to have defendant testify to his state of mind at the time of the shooting, and (3) to present available evidence of gunshot residue found on Jacob's hands. As we will explain, the claims lack merit.

"To establish ineffective assistance of counsel under either the federal or state guarantee, a defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant." (*In re Resendiz* (2001) 25 Cal.4th 230, 239.)

Defendant's new trial motion was based upon defendant's declaration; the declaration of Dr. Daniel W. Edwards, a licensed psychologist; and the testimony of defendant's trial counsel.

Defendant's declaration stated: For two months preceding the shooting, including the day of the shooting, he had been smoking "approximately three and one-half grams of crystal meth" per day; at times, such smoking made him disoriented, anxious, and nervous, and caused him to be unable to sleep for days, including 48 hours prior to the shooting; the methamphetamine caused him to see things that did not exist, including a dragon attacking him and people trying to break into his house, and to believe that people were out to kill him; and on the day of the shooting, he was "all freaked-out" and believed someone was going to kill him.

Defendant also asserted that his trial counsel had never discussed with him the difference between first and second degree murder, the difference between murder and manslaughter, or the concept of unreasonable self-defense, and that although counsel knew of defendant's drug use, she never discussed "diminished actuality" as a possible defense.

Dr. Edwards's [sic] declaration stated that for a person ingesting methamphetamine in the quantity and frequency stated by defendant, it was "reasonably possible" he was suffering from "delusional thought process, including, but not limited to bouts of paranoia;" and that such delusional thought "could affect [the person's] ability to form the intent to kill another while shooting a firearm."

Defendant's trial counsel testified as follows: She had discussed trial tactics with defendant, including the degrees of murder and the

6

concept of manslaughter. She had also discussed with him "the pros and cons" of his testifying and informed him the decision whether to testify was "his right to make." It was defendant who made the decision not to testify. Counsel was aware that defendant had a "methamphetamine problem," that he ingested methamphetamine the day of the shooting, and that he was probably feeling its effects at the time of the shooting. Within the last two years, counsel had done "extensive research" on the effects of "methamphetamine-induced psychosis," including consultation with medical doctors. Although counsel never discussed "psychosis" with defendant, she believed they had discussed whether he suffered from episodes of paranoia. Counsel believed that she discussed a "diminished actuality" defense with defendant, but decided not to have him evaluated regarding methamphetamine-induced psychosis; instead she decided to rely on self-defense and defense of others.

II

Defendant argues that the evidence at trial regarding his extensive methamphetamine use, including his use the day of the shooting, coupled with his declaration and that of Dr. Edwards, shows a "diminished actuality" defense was available and defense counsel was ineffective for failing to present it, rather than self-defense. The record does not support the claim.

In a criminal trial, the question of which defense to use is a tactical one best left to trial counsel. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1007; *People v. Haskett* (1982) 30 Cal.3d 841, 852-853.)

Here, trial counsel testified that after having discussed with defendant possible defenses, she determined as a tactical matter that self-defense was the best defense available. Although no witness testified to having actually seen Jacob with a weapon when he approached the Cadillac, Charley said she told defendant that both Jacob and the Mercedes matched the description of a person with whom her brother recently had problems, and that her brother had warned her to be on the lookout for this man since she now owned her brother's Cadillac. Charley also testified at length about watching Jacob approach the Cadillac, moving side to side, and keeping his hands under his shirt on or near his belt. Charley continually watched Jacob because, based on his "holding his waist and his body language," it appeared Jacob might have a "strap" with him (she "don't want to holler at you"), Jacob was "still comin' [and] loud talkin' even after he was asked to step off." It was at this time that defendant shot Jacob.

Charley's testimony, if believed by the jury, was sufficient to support self-defense and defense of others because it would have allowed jurors to infer that Jacob's aggressiveness and refusal to back off, his keeping his hands beneath his shirt near his belt, and his looking like

7

the person Charley had been warned to watch out for because he was having problems with Charley's brother, led defendant to believe that Jacob was reaching for a gun to harm defendant and/or Charley. Thus, defense counsel's tactical strategy was not unreasonable, and ineffective assistance of counsel has not been shown.

### III

Defendant argues counsel was ineffective in pursuing the defense of self-defense or defense of others without having him testify that he was in fear of Jacob at the time he shot Jacob. Again, no ineffectiveness has been shown.

As the People point out, defendant's testimony was not essential because Charley had provided an account of the incident that would have support self-defense and defense of others. And defendant faced a substantial risk if he testified; he was subject to impeachment with his prior statements to officers.

Defense counsel stated that she discussed with defendant the pros and cons of his testifying, as well as potential defenses, and that after she explained to him it was his choice, defendant chose not to testify. In his declaration, which was the only direct evidence presented by him in support of the new trial motion, defendant did not claim that counsel failed to advise him of his right to testify, and he did not state that he wanted to testify or precisely what his state of mind was when he shot Jacob.

The trial court found it was defendant's choice not to testify, observing that not only had counsel testified she told defendant of his right to testify, but the court itself had "expressly reminded [defendant] of his right to testify." Because substantial evidence supports the court's finding in this regard, no ineffectiveness has been shown.

### IV

Defendant claims trial counsel was ineffective because she failed, in support of self-defense, to present evidence contained in a laboratory report that gunshot residue (GSR) was on Jacob's hands. Defendant is wrong.

Like the choice of which defense to present, the choice of what evidence to present is a tactical choice within the discretion of counsel to make upon a showing of reasonable investigation. (*In re Visciotti* (1996) 14 Cal.4th 325, 348.)

The laboratory report stated that GSR was found on Jacob's hands, but not the hands of Lanette Watson or on the Mercedes Benz. The

8

> report stated: "Gunshot residue particles are usually deposited on a subject's hands by firing a gun, being near a gun when it is fired, or handling a fired gun or fired ammunition." Counsel, and the prosecutor had discussed admission of the test results.
>
> Defendant's argument in support of his ineffectiveness claim is as follows: "The GSR evidence was disclosed by the prosecutor approximately a month before trial started. Thus, this evidence should have been reviewed, considered, and a criminalist or other qualified expert subpoenaed to present such at trial. [¶] Since defense counsel argued that this was a case of self-defense, it is inexplicable why [s]he did not call a witness to present this evidence. This oversight denied [defendant] presenting to the jury the only hard evidence which constituted some proof of his defense."
>
> There is nothing "inexplicable" about counsel's decision. Although counsel was never asked at the hearing why she decided not to introduce the report's test results, an obvious reason is that such evidence likely would have reinforced the prosecution's position, not defendant's. This is so because no witness testified to there being two shots fired; no witness testified that Jacob had a gun; there was no GSR residue on Watson's hands; and there was no evidence of a gun being found in the vicinity of the shooting.
>
> In light of this uncontradicted evidence, the most reasonable conclusion was that the gunshot residue on the victim's hands was deposited there by his holding his hands in a defensive position when he saw defendant aiming the gun at him.

Lodged Doc. 1 at 5-11.

The Sixth Amendment to the United States Constitution guarantees to a criminal defendant the effective assistance of counsel. A showing of ineffective assistance of counsel has two components. *See Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must demonstrate that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S.

9

at 689). As the United States Supreme Court recently emphasized, the question for a federal court conducting habeas corpus review under section 2254(d) "is not whether counsel's actions were reasonable." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. (internal quotations and citations omitted). The determination to be made, therefore, is not whether counsel acted reasonably, but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

The second factor required for a showing of ineffective assistance of counsel is actual prejudice caused by the deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id. See also Williams v. Taylor*, 529 U.S. 362, 391-92 (2000); *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000). Importantly, on collateral review, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697).

The thorough decision of the California Court of Appeal, Third Appellate District, rejecting Petitioner's claim that the trial court erred by declining his motion for a new trial based on his ineffective assistance of counsel allegations is not contrary to or an unreasonable application of clearly established federal law, nor is it based on an unreasonable determination of the facts in light of the circumstances. As the state appellate court explained, the tactical decisions exercised by counsel at trial were reasonable and within the bounds of the discretion afforded to her. Moreover, while Petitioner may wish, with the benefit of hindsight, that he had testified at trial, the record

10

reflects that both counsel and the court informed Petitioner that he had a right to testify and he chose to waive that right. Thus, Petitioner has failed to overcome the significant burden of demonstrating that trial counsel's performance fell below professionally acceptable standards. Under the circumstances of this case, and for the reasons expressed by the state appellate court, Petitioner's trial counsel did not render ineffective assistance, and the trial court properly denied his motion for a new trial. Petitioner is not entitled to habeas corpus relief on this claim.

**B. SUFFICIENCY OF EVIDENCE IN SUPPORT OF PETITIONER'S CONVICTION**

Petitioner claims that insufficient evidence supports his conviction because two prosecution witnesses, Amanda Razick and Moriah Charley, testified at trial that he was under the influence of crystal methamphetamine and marijuana at the time the offense was committed, thus it could not be established that he intended to kill the victim.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On habeas corpus review, the court must determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). In applying this standard, the reviewing court refers to the substantive elements of the criminal offense as defined by state law. *See id*. at 324 n.16. Sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[A] reviewing court may not ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt, only whether *any* rational trier of fact could have made that finding." *U.S. v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (internal quotations omitted) (emphasis in original); *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991) ("The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could

reach the conclusion these jurors reached."). Reversal of a conviction is required only "if the evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would have to conclude that the evidence of guilt fails to establish every element of the crime beyond a reasonable doubt." *Id.*

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H.V. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). As noted above, all evidence must be considered in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319. The prosecution is not required to "rule out every hypothesis except that of guilt," and the reviewing court, "when faced with a record of historical facts that supports conflicting inferences, must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296-97 (1992) (internal citations omitted). *See also Nevils*, 598 F.3d at 1164. This is so because it is the province of the jury to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. *See also Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) ("A jury's credibility determinations are therefore entitled to near-total deference under *Jackson*."). Thus, a reviewing court "may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial." *Nevils*, 598 U.S. at 1164 (citing *Jackson*, 443 U.S. at 318-319).

Sufficiency of the evidence claims are judged by "the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16. Under California law, murder is "the unlawful killing of a human being . . . with malice aforethought." CAL. PENAL CODE § 187. Murder in the first degree is defined as follows:

12

> All murder which is perpetrated by means of a destructive device or explosive, a weapon of mass destruction, knowing use of ammunition designed primarily to penetrate metal or armor, poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any action punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree.

CAL. PENAL CODE § 189.

Viewing the evidence in the light most favorable to the prosecution, it is apparent that there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that Petitioner was guilty of first degree murder. This is not such a case where *all* fact finders would be forced to conclude that the evidence presented failed to establish every element of the crime of first degree murder beyond a reasonable doubt. *See Nevils*, 598 F.3d at 1164. That Petitioner can construct from the evidence alternative scenarios which he claims are at odds with the verdict does not mean that evidence was insufficient to support his conviction. A reviewing court is not permitted, as it appears Petitioner would have this court do, to re-weigh evidence, draw its own independent inferences from the evidence, or substitute its own witness credibility determinations for that of the jury. Petitioner is not entitled to federal habeas corpus relief on this claim.

## VI. CONCLUSION

For all of the foregoing reasons, the petition should be denied. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a

substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's July 1, 2010 petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied; and

2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time waives the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: January 25, 2012

/s/ Charlene H. Sorrentino
CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE